UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IRON WORKERS ST. LOUIS          )
DISTRICT COUNCIL ANNUITY        )
TRUST, et al.,                  )
                                )
            Plaintiffs,         )
                                )
      v.                        )          No. 4:15-CV-00713-AGF
                                )
UNITED IRONWORKERS, INC.,       )
                                )
            Defendant.          )

## MEMORANDUM AND ORDER

This matter is before the Court on cross motions for summary judgment in this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, to recover delinquent fringe benefit contributions. Plaintiffs, three multiemployer fringe benefit funds and their fiduciaries, move for summary judgment against Defendant in the amount of $795,701.01, which they assert is the amount owed by Defendant in delinquent contributions, liquidated damages, interest, and audit costs following audits[1] of Defendant's records for the periods of January 1, 2010 through June 30, 2013, and July 1, 2013 through June 30, 2014. (Doc. No. 45.) Plaintiffs also seek an order compelling a further audit for the period of July 1, 2014 to the present.

Defendant United Ironworkers, Inc., moves for partial summary judgment on Plaintiffs' claims for delinquent contributions, and associated penalties and interest, with

---

[1] Although the parties agree that payroll examinations, rather than full financial audits, were performed, the parties use the terms "payroll examination" and "audit" interchangeably. The Court will therefore refer to the payroll examinations as "audits."

respect to the following categories of discrepancies found by the audits: (1) alleged bonus payments, which Defendant asserts were not paid for hours worked; (2) hours allegedly worked on something other than ironworking, such as office or maintenance work; (3) hours allegedly worked by brothers Eugene Edwards and Gerry Edwards (together, the "Edwards Brothers"), whom Defendant asserts it did not employ as union ironworkers during the relevant period; and (4) hours worked by ironworkers in Indiana whom Defendant asserts were covered by a different union and fund, outside of Plaintiffs' jurisdictions. (Doc. No. 42). Defendant asserts that these categories of discrepancies were based on inaccurate assumptions made by the auditor, and that the parties' agreements do not require contributions with respect to these categories.

For the reasons set forth below, the Court will grant Defendant's motion in part, to the extent it relates to alleged delinquent contributions based on bonuses, hours worked by the Edwards Brothers, and hours worked by ironworkers in Indiana; will deny Plaintiffs' motion to this extent; and will otherwise grant Plaintiffs' motion.

## BACKGROUND

Defendant is a party to various participation agreements with Plaintiffs under which it is required to make fringe benefit contributions to Plaintiffs on behalf of each union ironworker employed by Defendant, in the amount and according to the terms of the collective bargaining agreement ("CBA") of the local ironworkers union within whose jurisdiction work was performed. The CBAs, in turn, require Defendant to remit contributions to Plaintiffs at a per-hour rate for every hour worked by covered ironworkers and to remit monthly reports reflecting those hours. The participation

agreements also require Defendant to be bound by certain trust documents permitting Plaintiffs to audit Defendant's records to determine if the required contributions were made. The trust documents require Defendant to pay Plaintiffs' audit costs, attorneys' fees, and litigation costs, as well as interest and 10% liquidated damages on delinquent contributions.

Plaintiffs performed audits of Defendant's records for the periods of January 1, 2010 through June 30, 2013, and July 1, 2013 through June 30, 2014. Auditor Brad Soderstrom testified by deposition that he interacted with Defendant's corporate secretary, Paul Dickey, in completing the audits; that Defendant cooperated with him during the audits; and that Defendant provided him all of the information he needed to complete his audits accurately. Soderstrom's audit reports contained the following disclaimer:

> We were not engaged to, and did not perform an audit, the objective of which would be the expression of an opinion on the fringe benefit contributions submitted by the Employer. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

(Doc. Nos. 44-14 at 2, 44-15 at 2 & 44-16 at 2.) Rather than express a professional opinion as to how much Defendant actually owed Plaintiffs in contributions, the audit reports simply reflected what Defendant might owe Plaintiffs given the application of various assumptions to Defendant's payroll records, as explained below.

Applying these assumptions, Soderstrom found that Defendant owed Plaintiffs $491,664.87 in delinquent contributions, $49,225.31 in liquidated damages, and $213,403.08 in interest. In an affidavit submitted with Plaintiffs' motion for summary

judgment, Soderstrom attested that his firm will bill Plaintiffs $41,407.75 for performing the audits.

**<u>Assumption Related to Bonuses</u>**

Almost all of the delinquent contributions—$394,973.78 of the $491,664.87—reported in the audits were amounts due on alleged bonuses Defendant paid to its ironworkers. Defendant did not pay contributions to Plaintiffs based on payments that Defendant characterized as bonuses. These payments were labeled as various types of bonuses in Defendant's payroll records, including flat bonuses, lump sum bonuses, Christmas bonuses, and forgiven loans to employees. The audit reports state that Defendant explained to Soderstrom that Defendant paid bonuses in addition to payment for hours worked, and that its bonus system was used to reward exceptional service, was not mandatory, and could be discontinued at any time. Other than the payroll records labeling the bonuses as such, Defendant did not produce records to Soderstrom describing the bonus program or identifying the purpose of the bonuses.

Soderstrom further testified that, in his experience performing these types of audits, there are cases in which employers might disguise hours worked as bonuses to avoid making required contributions, and there are also cases in which employers legitimately pay bonuses to workers, in addition to payment for hours worked, and are therefore not required to make contributions based on those bonuses. Soderstrom testified that his standard audit procedure is to identify bonus amounts, try to determine the purpose for the bonuses, and unless he can verify otherwise, assume that they reflect

additional hours worked.[2]  Soderstrom testified that he could not verify the purpose for the bonuses here from the records Defendant provided, but that he did not find any evidence that the bonuses were in fact a subterfuge for hours worked, and he had no reason to disbelieve Defendant's verbal representations that the bonuses were paid in addition to (rather than in lieu of) payment for hours worked.  Soderstrom also testified that he received direction from Plaintiffs' counsel to include the bonuses as hours worked in his reports.

Soderstrom, therefore, assumed the bonuses were paid in lieu of payments for hours worked and calculated the number of hours worked by dividing the bonus amount by the average wage rate in effect for the year; Soderstrom then multiplied this number by the fringe benefit rate.  Applying this assumption and formula, Soderstrom found that Defendant owed $394,973.78 in contributions in connection with the alleged bonuses.

Defendant's owner, Kim Rasnick, testified in his deposition that, during the relevant periods, he paid union ironworkers the rate set by the CBAs for all hours worked but also paid his "topnotch" workers additional amounts as bonuses.  He testified that approximately 20% of his employees received such bonuses and that his decision to pay bonuses was discretionary and in all cases made by verbal agreement.  Rasnick further testified that he sometimes loaned his good workers money to cover personal expenses and if the money was not paid back, he treated the loan as a bonus that the worker would have otherwise received for good work and did not give the worker any further bonus.  Finally, Rasnick testified that he gave Christmas bonuses to most or all employees in

---

[2]  Soderstrom attested to similar facts in his affidavit.

years that his company was profitable. (Doc. No. 44-9 at 3-6.) All of Defendant's union ironworkers who were deposed by Plaintiffs also testified that Defendant paid them per-job, lump-sum, Christmas, and other types of bonuses from time to time, and that these bonuses were paid in addition to their regular payment for hours worked.

In their depositions, Plaintiffs' board members testified that they had no evidence, other than the audits, that Defendant paid bonuses in lieu of payment for hours worked by union ironworkers.

**Assumption Related to Hours Worked on Something Other Than Ironworking**

Iron Workers Local 392's CBA requires that Defendant make contributions to Plaintiffs "for each hour worked for each employee covered by this agreement." (Doc. No. 45-20 at 44-45.) The CBA covered "Iron Workers and Apprentices who are employed by [Defendant] performing work described in Article 2 hereof, within the territorial jurisdiction" of the CBA; Article 2, in turn, listed various types of work related to ironworking. *Id.* at 5, 10-12.

Defendant paid contributions to Plaintiffs for 29 hours worked per week by each of the following union ironworkers covered by Local 392's CBA: Jason Dagner, Michael Thornton, Christopher Wills, and David Wills.[3] Defendant paid contributions for up to 29 hours per week, regardless of the type of work performed by these ironworkers. The four ironworkers each worked more than 29 hours per week, but Defendant did not pay

---

[3]     Although Defendant disputes the extent to which each of these employees performed ironworking, Defendant admits that all of the employees at issue in Soderstrom's report were union ironworkers covered by Local 392's CBA.

contributions to Plaintiffs for hours worked over the 29-hour limit. In his affidavit, Soderstrom attests that he could not determine from Defendant's records what type of work these ironworkers performed during the additional hours worked. Soderstrom assumed that contributions were owed for hours worked by the four ironworkers over 29 hours per week. Applying this assumption, Soderstrom found that Defendant owed $49,738.23 in contributions in connection with the additional hours worked by Dagner, Thornton, Christopher Wills, and David Wills. [4]

In their depositions and in declarations submitted with Defendant's motion for summary judgment, these ironworkers testified and declared under penalty of perjury that any additional hours they worked for which contributions were not paid were hours spent on something other than ironworking, such as office work.

Soderstrom also included in his report hours worked by Local 392 ironworker Moises Sanchez. Defendant did not pay contributions to Plaintiff on behalf of Sanchez for these hours. It is undisputed that Sanchez did not perform ironworking during these hours but instead performed maintenance work in Defendant's warehouse. Soderstrom

---

[4] Defendant characterized its payments to these ironworkers for more than 29 hours per week as "bonuses," but Soderstrom calculated contributions for these payments separately than the contributions for general bonuses, such as the lump-sum and Christmas bonuses which these workers also received. In his affidavit, Soderstrom attests that "the $49,738.23 figure only includes contributions owed on 'bonus' pay for hours worked above 29 per week" by the four ironworkers, and that other types of bonuses received by these workers were included in his calculation applying to general bonuses, described above. (Doc. No. 45-34 at 3 n.1.) For ease of reference, the Court will use the term "bonus" in this Memorandum and Order to refer to payments Defendant claims to have made in addition to payment for hours worked. Payments Defendant made for hours worked—regardless of the type of work performed—will not be referred to as "bonuses" by the Court.

assumed that contributions were owed for these hours worked by Sanchez, in the amount of $7,737.05.

**Assumption Related to Edwards Brothers**

Soderstrom included the Edwards Brothers in his report because steward reports from Local 392 showed that the brothers were on one of Defendant's jobsites for 294 hours each for the period of March through May 2013. Defendant informed Soderstrom during the audit that the Edwards Brothers had never been employed by Defendant, and that the brothers may have been on Defendant's jobsites to visit their relative and Defendant's employee, Chris Edwards. Soderstrom did not talk to the Edwards Brothers or Chris Edwards before making his report. Defendant did not pay any contributions to Plaintiffs on behalf of the Edwards Brothers.

Soderstrom assumed that the Edwards Brothers were covered ironworkers who worked for Defendant during the hours they were present on Defendant's jobsites, and he therefore found that Defendant owed $21,694.74 in contributions for the Edwards Brothers.

The Edwards Brothers have submitted declarations in connection with Defendant's motion for summary judgment, in which they declare under penalty of perjury that they are both retired ironworkers; that they have never been employed or paid by Defendant; that their relative, Chris Edwards, was employed by Defendant; that, on various occasions, they visited Defendant's jobsites where Chris Edwards was working "for [their] own purposes," including to check on Chris's progress in the ironworking trade; and that they did not perform any work for Defendant during these

visits.  (Doc. Nos. 44-11 & 44-12.)  Soderstrom submitted a supplemental affidavit, in connection with Plaintiffs' response to Defendant's motion, attesting that, according to Defendant's records, Chris Edwards was not present on Defendant's jobsites for slightly more than half of the time the Edwards Brothers spent there.

**Assumption Related to Hours Worked by Ironworkers in Indiana**

Finally, Soderstrom included in his report hours worked by ironworkers in Indiana.  Soderstrom assumed this work was within Plaintiffs' jurisdictions and, applying that assumption, found that Defendant owed $17,377.83 in contributions for work performed by ironworkers in Indiana.

Soderstrom testified that he did not know whether Defendant had made contributions on behalf of these ironworkers to a fund outside of Plaintiffs' jurisdictions because Defendant had not produced any such records.  In a declaration submitted with Defendant's motion for summary judgment, Defendant's corporate secretary, Dickey, declared under penalty of perjury and based on personal knowledge, that the Indiana ironworkers at issue were covered by a different fund (Local 22), outside of Plaintiffs' jurisdictions, and that Defendant made the required contributions to Local 22 for these ironworkers.

## ARGUMENTS OF THE PARTIES

Plaintiffs argue that Soderstrom's audit findings are presumptively valid and that Defendant has failed to rebut that presumption.  With respect to bonuses, Plaintiffs concede that the parties' agreements require contributions based solely on the number of hours worked by covered ironworkers, and that Defendant is not required to make

contributions based on legitimate bonuses paid in addition to payment for hours worked. However, Plaintiffs argue that Defendant has failed to produce sufficient documentation that its bonuses were legitimate, rather than a subterfuge for hours worked.

Regarding hours worked on something other than ironworking, Plaintiffs argue that under the plain language of the relevant CBA, Defendant owed contributions "for each hour worked" by covered ironworkers, regardless of whether that work constituted ironworking. Alternatively, Plaintiffs argue that because Defendant did not maintain sufficient records to determine the type of work performed by the ironworkers at issue during the relevant hours, Defendant has failed to rebut the audit's finding that contributions were owed on these hours.

With respect to hours allegedly worked by the Edwards Brothers, Plaintiffs argue that Defendant's evidence is insufficient to rebut the audit's finding that such contributions were owed. In support of this argument, Plaintiffs note that union steward reports demonstrate that the brothers were present on Defendant's jobsites for a significant number of hours during the relevant period, and that contrary to the brothers' statements that they were merely checking on their relative, Chris Edwards, Chris Edwards was not present on the jobsites for slightly more than half of these hours.

Regarding hours worked by ironworkers in Indiana, Plaintiffs argue that Defendant has not produced any documents other than the affidavit of its corporate secretary, Dickey, to support its argument that these workers were outside of Plaintiffs' jurisdiction. Plaintiffs argue that Dickey's affidavit is conclusory and should be rejected.

Plaintiffs argue that, under the terms of the parties' agreements and under ERISA, 29 U.S.C. § 1132, they are entitled to liquidated damages, interest, audit costs, and a further audit for the period of July 1, 2014 to the present.[5]

Defendant argues that the Court should reject the audit's findings because they were based on Soderstrom's inaccurate assumptions relating to bonuses, non-ironworking work, the Edwards Brothers, and hours worked by ironworkers in Indiana. Other than these four categories of delinquent contributions, Defendant does not offer specific arguments or evidence to refute the auditor's findings.

With respect to bonuses, Defendant argues that Plaintiffs have offered no evidence, other than Soderstrom's speculative assumption made at the direction of Plaintiffs' counsel, to demonstrate that the bonuses here were used as a subterfuge to disguise hours worked. Defendant contends that the undisputed evidence demonstrates that the bonuses at issue were paid in addition to payment for hours worked.

Next, Defendant argues that no contributions are owed for hours worked on something other than ironworking, such as office or maintenance work. Defendant argues that it voluntarily paid contributions for up to 29 hours of work per week on behalf of the four ironworkers noted above—Dagner, Thornton, Christopher Wills, and David Wills—even though these hours were largely spent on something other than

---

[5] Plaintiffs also state that they reserve the right to submit a separate memorandum in support of a motion for attorneys' fees and costs.

ironworking,[6] so that these workers could maintain their union health care and retirement benefits.  But Defendant argues that it was not required to make such contributions for work unrelated to ironworking and that it need not make any more contributions because any work performed beyond 29 hours per week was unrelated to ironworking.  Likewise, Defendant argues that it was not required to make contributions on behalf of Sanchez, who undisputedly performed only maintenance work during the relevant period.

With respect to the Edwards Brothers, Defendant argues that the brothers' declarations demonstrate that they were not covered ironworkers employed by Defendant, and that Plaintiffs have failed to provide any evidence in support of Soderstrom's assumption to the contrary.

Regarding hours worked by ironworkers in Indiana, Defendant argues that the declaration of its corporate secretary, Dickey, demonstrates these ironworkers were outside of Plaintiffs' jurisdictions, and that Plaintiffs have again failed to provide any evidence in support of Soderstrom's assumption to the contrary.

Defendant also argues that Plaintiffs are not entitled to audit costs unless delinquent contributions are found from the audit, and Defendant argues that no deliquency should be found here, for the reasons stated above.

---

[6]  Defendant argues that, according to their own testimony and declarations, Thornton, Christopher Wills, and David Wills did not perform any ironworking during the relevant period.  Defendant argues that Dagner likely performed less than 29 hours of ironworking per week, and that in any event, the extent of Dagner's hours spent on ironworking is a question of fact.

Finally, Defendant argues that Plaintiffs' request for a subsequent audit should be denied because Plaintiffs have not followed the procedures set forth in the CBAs for requesting a future audit.

## DISCUSSION

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015) (citation omitted). In opposing summary judgment, the non-movant may not "simply point to allegations" in the pleadings, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Matter of Citizens Loan & Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the non-movant "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

Plaintiffs are suing under Section 515 of ERISA, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "Under ERISA § 515, [multiemployer fringe benefit funds] may collect only those contributions that [an employer] is contractually obligated to pay."

*Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578, 582 (8th Cir. 2000).

Ordinary contract law governs the interpretation of CBAs, and if a CBA is unambiguous, the parties will be bound by its terms. *Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1350 (8th Cir. 1990). "The law is clearly established in this circuit that a contract is ambiguous only if it is reasonably susceptible of more than one construction," and "[i]n ascertaining whether a contract is reasonably susceptible of more than one construction, words are to be given their plain and ordinary meaning as understood by a reasonable, average person." *Id.*

"ERISA plan trustees may audit an employer's payroll records to verify that required contributions have been paid." *McKenzie Eng'g*, 217 F.3d at 582. But where, as here, a dispute "arises because of assumptions the [plaintiff] [f]unds made in interpreting [an employer's] records," and the employer "come[s] forward with evidence establishing that the auditor's assumptions were unfounded," the plaintiffs must come forward with evidence to the contrary or be left "with an unremedied failure of proof." *Id.* at 585.

**Bonuses**

The Court finds, and the parties agree, that the relevant agreements unambiguously require contributions only for "hours worked" by covered ironworkers, and not for bonuses paid in addition to (rather than in lieu of) payment for hours worked. The Court also concludes that the record does not support a finding that the bonuses here were paid in lieu of payment for hours worked.

Soderstrom's assumption that the bonuses Defendant paid to its ironworkers were not truly bonuses but were disguised payments for hours worked was based entirely on Defendant's lack of a written bonus plan or other documentation setting forth the purpose of the bonuses, and on Plaintiffs' counsel's direction to include the bonuses in the audit report. But Plaintiffs and Soderstrom point to nothing that required Defendant to put its bonus policies in writing. And they admittedly have no evidence that the bonuses here were in fact disguised payments for hours worked.

Against this assumption, Defendant has come forward with evidence, in the form of its officers' and employees' deposition testimony and declarations, that the bonuses were paid in addition to payments for hours worked. This testimony is supported by Defendant's contemporaneous payroll records, which characterize the challenged bonuses as separate bonus payments. *See Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*, No. 03 C 6867, 2007 WL 6080197, at *14-15 (N.D. Ill. Aug. 27, 2007) (finding, as a matter of law, that an employer established the invalidity of an auditor's assumption that bonus payments were a disguise for hours worked where the employer and employees testified that bonuses were not paid in lieu of hours worked and the employer's contemporaneous records characterized the bonus payments as such). Defendant's lack of written bonus policies does not undermine this testimony. *See id.* at *14 (holding that the lack of written bonus procedures did not give rise to an inference that the bonuses were illegitimate because "[d]ifferent companies operate with differing degrees of formalities in their procedures and practices"). Because Plaintiff has not offered any evidence to contradict Defendant's evidence, Plaintiffs have failed to present

a triable issue that the payments they challenge as having been improperly characterized as bonuses instead reflect hours worked.

The cases cited by Plaintiffs are inapposite because, unlike here, the employers in those cases produced no evidence to substantiate their claims that the audit's assumptions were inaccurate. *See, e.g., Nali v. MaxPro Flooring, LLC*, No. CIV. 09-3625 MJD/JJK, 2013 WL 673779, at *7-8 (D. Minn. Feb. 25, 2013); *Greater St. Louis Const. Laborers Welfare Fund v. D&H Concrete, Inc.*, No. 4:05-CV-2352 (CEJ), 2008 WL 2437419, at *2 (E.D. Mo. June 12, 2008) (holding on default judgment that the employer failed to refute the plaintiffs' affidavits and documents calculating the amount of contributions owed); *Greater St. Louis Const. Laborers Welfare Fund v. Don Richardson Concrete Co.*, 775 F. Supp. 1249, 1254 (E.D. Mo. 1991) (holding that the employer failed to prove an audit was inaccurate where it "did not call any of these employees to testify in court as to the type of work they performed for defendant" and "did not introduce the deposition testimony of these employees or the affidavits of these employees to contravene [the auditor's] assumptions").

Accordingly, the Court will grant Defendant's motion for partial summary judgment with respect to alleged delinquent contributions, liquidated damages, and interest relating to bonuses, and will deny Plaintiffs' motion to this extent.

**Hours Worked on Something Other Than Ironworking**

The Court finds that Local 392's CBA, which covers the ironworkers who worked on something other than ironworking during the relevant period, unambiguously requires contributions for all hours worked by covered employees, regardless of the type of work

performed.  Therefore, Soderstrom correctly assumed that contributions were owed for these hours.

The Court is persuaded by the Seventh Circuit case cited by Plaintiffs, *McClesky v. DLF Construction, Inc.*, 689 F.3d 677 (7th Cir. 2012), which held that the plain language of the CBA at issue required contributions for each hour worked by covered cement masons, even if the work was unrelated to cement work.  In that case, the CBA at issue covered employees "doing bargaining unit work" as described in the agreement as various types of cement-related work, and the CBA required the employer to contribute to the funds "for each hour worked by employees covered by the CBAs." *McClesky*,  689 F.3d at 679.  The court found that this language was "straightforward and plain" and required the employer to make contributions for each hour worked by cement masons within the trade jurisdiction of the fund, regardless of whether the work performed was cement-related or unrelated to cement work, such as painting, floor installation, and demolition.  *Id.* at 679-80; *see also Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*, 606 F. App'x 798, 802 (6th Cir. 2015) ("This section explicitly requires such contributions to be made 'for all hours paid to each employee by the Employer under this Agreement.'  Had the drafters wanted to limit benefits contributions solely to 'covered' work hours, they could have stated as much[.]"); *Bd. of Trs. of the Sign, Pictorial & Display Indus. Welfare & Pension Tr. Funds v. Event Prods. Inc.*, No. C 09-01914 SI, 2010 WL 4179265, at *3 (N.D. Cal. Oct. 20, 2010) ("The phrasing in the CBAs, that 'each hour paid or owed for [employees] covered by this Agreement,'

unambiguously requires payment of fringe benefits for every hour worked by covered employees, regardless what type of work those employees were engaged in.").

Here, too, Local 392's CBA covered ironworkers and apprentices employed by Defendant performing ironworking, and the CBA required Defendant to make contributions "for each hour worked for each employee covered by this agreement." Defendant does not dispute that the ironworkers at issue—Dagner, Thornton, Christopher Wills, David Wills, and Sanchez—performed ironworking at some point during the relevant period and were covered under the CBA. Defendant is thus bound by the agreement's unambiguous requirement to make contributions for each hour worked by these ironworkers, even if the hours were spent on something other than ironworking, such as office or maintenance work.

Defendant attempts to distinguish *McClesky* by arguing that, unlike in this case, the work performed by the employee at issue in *McCleksy* (painting, floor installation, and demolition) was "substantially similar" to the union's cement-related trade work. But the *McClesky* court did not draw such a distinction, *see id.*; nor does the CBA here. Further, the Court agrees with Plaintiffs that it would be impracticable for the Court to determine which types of work are "substantially similar" to ironworking without any contractual basis for doing so.

Accordingly, the Court will deny Defendant's motion for partial summary judgment with respect to the alleged delinquent contributions, liquidated damages, and interest relating to hours worked on something other than ironworking; and will grant Plaintiffs' motion to this extent.

**Edwards Brothers**

The Court concludes that the record does not support a finding that contributions were owed for hours in which the Edwards Brothers were present on Defendant's jobsites. The Edwards Brothers declarations state that they never worked for Defendant and that they visited Defendant's jobsites where their relative, Chris Edwards, was working for their own purposes, including to check on Chris's progress in the ironworking trade, but not to work. Plaintiffs have not submitted any evidence creating a genuine issue of material fact as to whether the Edwards Brothers were covered employees who performed work for Defendant. Plaintiffs' evidence, at most, shows that Chris Edwards was not present for slightly more than half of the time the Edwards Brothers spent visiting the jobsites. But that evidence does not create a genuine issue of material fact as to whether the Edwards Brothers worked for Defendant during this time. In their declarations, the Edwards Brothers attest that they visited the sites for their own purposes, and that checking on Chris Edwards's progress was one of those purposes. Indeed, the brothers could have been visiting the jobsites to check on Chris Edwards's progress even when Chris Edwards was not present.

Accordingly, the Court will grant Defendant's motion for partial summary judgment with respect to alleged delinquent contributions, liquidated damages, and interest relating to the hours the Edwards Brothers spent on Defendant's jobsites; and will deny Plaintiffs' motion to this extent.

## Hours Worked by Ironworkers in Indiana

The Court concludes that the record does not support a finding that contributions were owed for hours worked by ironworkers in Indiana. Defendant has offered evidence, in the form of its corporate secretary's declaration, that the work performed by the ironworkers in Indiana was outside of Plaintiffs' jurisdiction and that Defendant paid contributions for these hours to a different fund, Local 22. Plaintiffs again offer no evidence to refute this declaration or to create a genuine issue of material fact as to whether these workers fell within Plaintiffs' jurisdiction.

Accordingly, the Court will grant Defendant's motion for partial summary judgment with respect to alleged delinquent contributions, liquidated damages, and interest relating to the hours worked by ironworkers in Indiana; and will deny Plaintiffs' motion to this extent.

## Remaining Issues

Except to the extent stated above, the Court will grant Plaintiffs' motion for summary judgment based on the audit's findings, Defendant having offered no other evidence to contradict the audit's finding or create a triable controversy. *See Howard*, 363 F.3d at 800.

The Court will deduct from Plaintiffs' request for damages the amounts representing alleged delinquent contributions, liquidated damages, and interest relating to bonuses, the Edwards Brothers, and hours worked by ironworkers in Indiana. The Court

will ask the parties to confer and submit their agreed or respective positions as to these amounts.[7]

The Court will also grant Plaintiffs' request for audit costs. The parties' agreements provide:

> If an audit is conducted with the cooperation of the Employer in providing the requested documentation and responding to any follow up questions; no significant discrepancies are found; and any amounts determined to be due are paid without the need for collection efforts then the cost of the audit will be paid by the Fund. In all other cases, the cost of the audit will be assessed against the Employer.

(Doc. No. 45-30 at 12.) Because the Court has upheld the auditor's finding of at least some significant discrepancies, and because the amounts determined to be due have been the subject of this litigation, the cost of the audit is assessable against Defendant. Defendant does not dispute that the amount of audit costs requested here was reasonably incurred. Therefore, the Court will grant Plaintiffs' request for $41,407.75 in audit costs.

Finally, the Court will grant Plaintiffs' request to compel a further audit for the period of July 1, 2014 to the present. Defendant does not dispute that the parties' agreements permit Plaintiffs to conduct an audit. Defendant has not described what additional steps it believes are required under the parties' agreements for Plaintiffs to request a further audit; therefore, the Court will order Defendant to submit to an audit pursuant to the procedures set forth in the parties' agreements.

---

[7] Due to the confusion over Defendant's use of the term "bonuses" as described above, *see supra* note 4, these amounts are not clearly delineated in the record.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Union Ironworkers, Inc.'s motion for partial summary judgment is **GRANTED in part**, as to alleged delinquent contributions, liquidated damages, and interest for bonuses, hours worked by Eugene Edwards and Gerry Edwards, and hours worked by ironworkers in Indiana.  Defendant's motion is otherwise **DENIED**.  (Doc. No. 42.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment is **DENIED in part**, to the extent Defendant's motion is granted, and is otherwise **GRANTED**.  (Doc. No. 45.)

**IT IS FURTHER ORDERED** that the parties shall confer, and within **14 days** of the date of this Memorandum and Order, submit their agreed or respective positions as to the amount of the alleged delinquent contributions, liquidated damages, and interest for bonuses, hours worked by Eugene Edwards and Gerry Edwards, and hours worked by ironworkers in Indiana, to be deducted from Plaintiffs' requested damages.  The Court will enter final judgment after resolving this issue.

**IT IS FURTHER ORDERED** that Plaintiffs' request for an Order compelling a further audit is **GRANTED**.  Defendant shall submit its payroll registers and other documents needed to perform an audit for the period of July 1, 2014 to the present, within

**30 days** of the date of this Memorandum and Order, pursuant to the procedures set forth

in the parties' agreements.

_Audrey G. Fleissig_

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2016.